MISSOURI, K. & T. RY. CO. OF TEXAS v. HAMPTON.†

(Court of Civil Appeals of Texas. Dallas. Dec. 9, 1911. Rehearing Denied Jan. 6, 1912.)

1. MASTER AND SERVANT (§ 278*)—INJURIES—ACTIONS—EVIDENCE.

Evidence, in an action by a railroad fireman for injuries suffered by the engine being started while he was under the driver's cleaning the ash pan, *held* to show that the engineer knew that plaintiff was cleaning the ash pan when he started the engine.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

2. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

In an action for injuries to a fireman while raising the ash pan by a lever by the engineer starting the engine without warning, any error in hypothesizing a charge on negligence on the fact that the engineer "in the exercise of ordinary care should have known at the time he moved the engine" that plaintiff was cleaning the ash pan, when the petition alleged that the engineer well knew that plaintiff was in a position of peril in doing the work and negligently moved the engine without warning him that it was being moved, was not reversible error, where the evidence conclusively showed

that the engineer knew when he moved the engine that plaintiff was engaged in emptying the ash pan.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

3. TRIAL (§ 191*)—INSTRUCTIONS ASSUMING FACTS—PROVINCE OF JURY.

In an action for injuries to a fireman by the engineer suddenly starting the engine while he was beneath the drivers raising the ash pan, in instructing that if in the discharge of his duties as fireman it became necessary for plaintiff to empty the ash pan, and if, when the train was stopped, plaintiff alighted from his engine and commenced emptying the pan, and the jury further believed from the evidence, that, while the plaintiff was so engaged, the engineer caused the engine to be moved, whereby plaintiff was injured, and if the jury further believed that the engineer knew, or in the exercise of ordinary care should have known, when he moved the engine, that plaintiff was engaged in cleaning the ash pan, and if the jury further believed that, in moving the engine at the time and under the circumstances they find from the evidence such engineer did move such engine, he was guilty of negligence, they should find for plaintiff. *Held*, that the instruction was not objectionable as assuming that plaintiff was necessarily in a place of danger while emptying the ash pan.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431; Dec. Dig. § 191.*]

4. TRIAL (§ 192*)—INSTRUCTIONS—ASSUMING FACTS.

An instruction may assume a fact which is undisputed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

5. TRIAL (§ 192*)—INSTRUCTIONS—ASSUMING FACTS.

Where the evidence in a locomotive fireman's action for personal injuries by starting the engine, while the plaintiff was under the drivers cleaning the ash pan, conclusively showed that the engineer knew when he moved the engine that plaintiff was then emptying the ash pan, the court could assume in instructing that some injury should have been anticipated by the engineer to result from starting the engine while plaintiff was in that position.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

6. TRIAL (§ 256*)—INSTRUCTIONS—REQUESTS —OMISSIONS.

Any error, in an instruction in a locomotive fireman's action for personal injuries by starting the engine, while plaintiff was under the drivers cleaning the ash pan, in omitting the requirement that the engineer should have anticipated injury to plaintiff as a result of the removal of the engine in order to make his act negligence, was not affirmative error in the absence of the request of a special charge supplying the omission.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

7. TRIAL (§ 252*)—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE—APPLICABILITY TO EVIDENCE.

Where the undisputed evidence showed that, when a locomotive fireman was injured while cleaning an ash pan at the side of an engine, he was doing the work in the usual way and would not have been injured except for the engineer's negligence in starting the engine without warning, a requested charge was properly refused that if the jury believed that there was a safe way for plaintiff to do the work, and a way to do it which was at-

tended with danger, and plaintiff chose the latter, they should find for defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by T. C. Hampton against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

Alex S. Coke, Head, Smith, Hare & Head, and A. H. McKnight, for appellant. Wolfe, Maxey, Wood & Haven, for appellee.

TALBOT, J. The appellee brought this suit against the appellant to recover damages for personal injuries received by him through the negligence of appellant's servant and engineer in the operation of one of its engines and trains. That part of the petition which alleges the nature of the accident and the negligence causing the injuries is substantially as follows: That on or about the 15th day of February, 1910, plaintiff was in the employ of defendant as a locomotive fireman. That he was working in this capacity upon a locomotive as the same entered the town of Denton, Denton county, Tex. That the ash pan on said locomotive became so filled and clogged with ashes, cinders, and coals that it was necessary that the same should be emptied, and it was the duty of plaintiff to attend to this work. That the ash pan is operated by a lever on the side of a locomotive. That, after the engine stopped, plaintiff was attending to this, when the engineer negligently and carelessly moved said engine, causing the same to strike plaintiff, knock him down, and so crush his leg as to render amputation necessary. That the engineer well knew that plaintiff was performing this work, well knew that plaintiff was in a position of peril, but negligently moved the engine without notifying plaintiff and without giving any warning or signal that the same would be moved. The appellant pleaded general and special demurrers, a general denial, and specially that the injuries complained of, if any such were in fact sustained, were proximately caused and contributed to by plaintiff's own negligence and want of ordinary care and by that of his fellow servants. That said injuries, if any were received, resulted from one of the risks assumed by plaintiff. That of the said defects and causes which produced the injuries complained of, if any were produced, the plaintiff had full notice, or by the exercise of ordinary care on his part would have had full notice in ample time to have avoided the same. That plaintiff was guilty of contributory negligence in not keeping a proper lookout for his own safety at the time he was injured and in doing the character of work he was, at the time and un-

der the circumstances he was, without informing his engineer that he contemplated doing such work, and in doing the work in a dangerous way, when he could have performed the same with safety to himself. A jury trial resulted in a verdict and judgment in favor of appellee for the sum of $12,000, and the appellant appealed.

The evidence was sufficient to establish the material allegations of the plaintiff's petition and to justify the finding embraced in the verdict of the jury that appellee was not guilty of contributory negligence.

[1] It is first assigned that the court erred in refusing appellant's requested instruction No. 1, directing the jury to return a verdict in its favor. The proposition presented under this assignment is as follows: "Actual knowledge on the part of the engineer that appellee was emptying the ash pan and was in a position of peril or danger at the time he moved the engine is an essential element in the cause of action stated in the petition. The evidence in the case clearly shows that the engineer had no such knowledge. Therefore appellant was entitled to an instructed verdict." This proposition is not sustained. Certainly the evidence did not conclusively establish that the engineer did not have actual knowledge that the appellee was emptying the ash pan and in a position of danger at the time he moved the engine. On the contrary, the evidence was not only amply sufficient to show that the engineer did in fact know that the appellee was at such time engaged in cleaning the ash pan, and therefore in a dangerous position, but we are of opinion that no other conclusion could have been reached from it. The ash pan in question was operated by means of a lever which, when not in use, is fastened in a perpendicular position to the side of the engine. To empty the ash pan the lever is lowered. This causes the pan to open and the contents to fall out. When the pan has been emptied, the lever is returned to its perpendicular position, which closes the pan. When performing this work, the operator stands on the ground close to the lower part of the engine.

The engineer testified: "We pulled down over the Main street crossing in Denton and stopped. It was the intention to set out some cars. As directed, I dropped down five or six cars over the crossing and stopped. After I had stopped, I would say anywhere from 30 seconds to possibly a minute or two—or, at any rate, it was just a short time—I got a signal from the head brakeman, Carter or Dalton, one, whichever one works ahead. I moved ahead about a half a car length, say 40 feet, and received a stop signal, in obedience to which I stopped. After the engine came to a standstill, it was again moved. I would say that the engine stood still about 30 seconds at the time it stopped the second time. The engine the second time moved about 20 or 25 feet. I received a signal to move ahead, and I moved it on this signal. It was the second movement of the engine that caused plaintiff's injuries. I did not know that he was going to clean the pan when we got to Denton, but I saw him light his torch and get down off the engine when we made the first stop, and it was my opinion that he was going to work on the ash pan. Then when I received the signal to go ahead I stepped over and told him to look out; that I was going to move the engine. He said: 'All right. Go ahead.' I then moved the engine in the manner I have heretofore stated, and made the second stop. At the second movement I cracked the throttle, that is, gave the engine just enough steam to move off slowly, and then it occurred to me that I ought to see if plaintiff had gotten through with his work, and I stepped to his side of the engine, and it was then that I saw him in the act of falling. I immediately jumped back, put on the air, and stopped the engine after it had passed over his foot about 6 inches, not over 12 inches. I saw Mr. Hampton just as he got off the engine just before he was injured. Then he passed from my sight, and I again saw him just as he fell and just immediately before he was actually run over. I received a signal to move the engine every time I moved it. The fireman on this occasion when I moved the engine was operating the lever to the ash pan. This was the movement of the engine that injured plaintiff. At the time of moving the engine when plaintiff was injured, no bell was rung or whistle blown or warning or notice given of an intention to move the engine."

Appellee testified: "I told him I would have to clean the ash pan when we got down to the depot; that is, I told him I would have to clean it before we left Denton. I told the engineer I would have to clean the ash pan, and when we got there to Denton I got my torch and got down on the ground, and he came over and told me that he was going to move the engine, and I got back up on the engine and told him all right. I threw the lever the first time we stopped. I didn't want to pull the cinders out in a big pile next to the depot, and I opened the pan so when the engine started up it would strew them along the track. I got on the engine and rode down until he stopped. He went, I suppose, a car length or more. A car would be about 40 feet. Then the engine stopped. The door to the ash pan was open when he moved the first time. I got down when he stopped the second time. I got down to close the ash pan, which I did, that is, started to, and about the time I started to he knocked me down. You close it by raising the lever up. Yes, I can describe it a little more than that. When the lever is down it is down about even with your knees, right straight down,

that is, out this way, and when it is up it is up perpendicular. I am acquainted with the usual, ordinary, and customary manner of opening that ash pan. When a man opens the pan, he is facing the tank. He is on the ground facing the tank. At the time he moved up I was raising the lever up to put in position. The lever struck me; that lever and the feed pipe. The tank hose went between my legs. The tank hose comes down from the tank and connects to that feed pipe. It extends out beyond the drivers. I was down beneath those drivers putting up the lever at the time the engineer moved the engine forward, and I was struck by that lever and this supply pipe. I was doing that work in the usual and ordinary way that it is done. It was my duty to put up that lever. At the time the engine was moved forward the second time I did not know the engineer was going to move it. No notice was given whatever; the bell was not rung or whistle blown; no notice at all. It is not usual and customary for an engineer to move the engine when a man is working with the fire box that way without notifying the man that is at work there. If you are down working with whatever you are doing they generally come over and tell you to look out; they are going to move the engine. It is customary to ring the bell or blow the whistle when they start to move.

[2, 3] In the fourth paragraph of the court's charge the jury were instructed as follows: "Now, bearing in mind the foregoing instructions, if you believe from the evidence that in the discharge of his duties as a fireman it became necessary for plaintiff to empty the ash pan to the engine he was firing on said occasion; and if you further believe from the evidence that when the train was stopped at the town of Denton plaintiff alighted from his engine and commenced the work of emptying said ash pan; and if you further believe from the evidence that while plaintiff was so engaged in such work the engineer caused said engine to be moved, whereby plaintiff was struck and knocked down by said engine and thereby injured as alleged in his petition; and if you further believe from the evidence that said engineer knew, or, in the exercise of ordinary care for the safety of plaintiff, should have known, that at the time he moved said engine plaintiff was engaged in performing the work of emptying said ash pan; and if you further believe from the evidence that, in moving said engine at said time and under the circumstances you find from the evidence said engineer did move said engine, said engineer was guilty of negligence, as that term has been heretofore defined to you, and that such negligence, if any, was the proximate cause of plaintiff's injury—then you will find for plaintiff and assess his damages as hereinafter directed, unless you should find for defendant under other instructions given you." This charge is objected to on the grounds: (1) That there is no basis in the pleadings for that part of it which submits to the jury the question whether, in the exercise of ordinary care for the safety of appellee, the engineer should have known at the time he moved the engine that appellee was engaged in performing the work of emptying the ash pan; and (2) that it is upon the weight of the evidence, in that it assumes, and in effect charges the jury, that appellee, while performing the work of emptying the ash pan, was necessarily in a position of danger. The material allegations of the plaintiff's petition in this connection are as follows: "After the engine stopped, plaintiff was attending to this when the engineer negligently and carelessly moved said engine, causing the same to strike plaintiff, knock him down, and so crush his leg as to render amputation necessary. The engineer well knew that plaintiff was performing this work; well knew that plaintiff was in a position of peril, but negligently moved the engine without notifying plaintiff and without giving any warning or signal that the same would be moved." The contention seems to be that, inasmuch as the petition alleged definitely that the engineer knew that the plaintiff was emptying the ash pan, it was error for the charge to authorize a verdict in favor of the plaintiff, the other facts enumerated therein being found to exist, if the engineer "in the exercise of ordinary care should have known, at the time he moved the engine," that plaintiff was doing that work. Obviously, the court's charge does not literally conform to the allegations of the petition; but we think it may be safely said that the defendant suffered no substantial injury by reason of the departure therefrom, and the assignment will be overruled. As we have in effect said, the evidence was practically conclusive that the engineer knew, when he moved his engine, that appellee was engaged in emptying the ash pan, and the jury must have so found. Besides, that portion of the charge complained of stated a correct abstract proposition of law, and if error, in view of the allegations of the petition to which we have referred, it was not such a substantial error as should operate to reverse the case.

[4] In reference to the other ground of objection, it is sufficient to say that the charge in question is not subject to the criticism that it invades the province of the jury by assuming that appellee, while performing the work of emptying the ash pan, was necessarily in a place of danger, or that if it does the assumption was warranted by the undisputed facts.

[5] The third assignment complains of the fifth paragraph of the court's charge on the ground, in substance, that it omits an essential ingredient, namely, that, unless the engineer should have anticipated injury to appellee as a proximate result of the movement of the engine, such act would not constitute

negligence, although he knew, or by the exercise of ordinary care would have known, at the time he moved the engine, that appellee was engaged in emptying the ash pan. In view of the conclusive character of the evidence that the engineer knew, at the time he moved the engine, that appellee was then engaged in the work of emptying the ash pan, the court was authorized to assume that some injury to appellee should have been anticipated by the engineer in the act of moving his engine at that particular instant.

[6] Besides, the court's charge as constructed did not constitute affirmative error, and a special charge supplying the omission suggested should have been requested.

[7] We are also of the opinion that the court did not err in refusing to charge the jury, at defendant's request, "that if they believed there was a safe way for the plaintiff to perform the act he was performing at the time of his injury, and there was a way to perform the act he was performing at the time of his injury, and there was a way to perform said act which was attended with danger to plaintiff, and that plaintiff chose the latter, then to find for defendant." The evidence did not call for the giving of this charge. It appears practically without dispute that appellee, at the time he was injured, was performing the work of emptying the ash pan in the usual and customary way, and that, but for the negligence of appellant's engineer in moving the engine without notice or warning, the accident would not have occurred. There being no evidence calling for the application of the principle embraced in the special charge, the giving of it would probably have confused and misled the jury to appellee's prejudice. It was therefore properly refused.

For the same reason there was no error in refusing the special charges made the basis of appellant's fifth and sixth assignments of error.

The seventh assignment, complaining that the verdict is excessive, will also be overruled. There is nothing in the record indicating that the jury was actuated by passion, prejudice, or other improper motive in arriving at their verdict, and the evidence is sufficient to support the same for the amount awarded.

The judgment of the court below is affirmed.